May it please the Court, Elizabeth Wydra for the Petitioners, Mr. Lopez Baena and Ms. Ramirez. With the Court's permission, I would like to reserve two minutes of my time. You may do so. Thank you. The immigration judge in this case denied the Petitioners their right to a full and fair hearing before a neutral adjudicator when she substituted speculation and bias for credible, undisputed evidence. Specifically, the immigration judge's bias against immigrants who receive public assistance in the United States prevented her from considering the Petitioners as legitimately disabled and therefore prevented her from fully assessing the hardship that removal to Mexico would cause the Petitioners to United States citizenship. Well, Counselor, you're referring to a bias claim at this stage. I didn't see where this claim was exhausted. Was that brought to the attention of the I.J. or the BIA? Your Honor, the due process claim was not raised with the words ''due process'' before the Board of Immigration Appeals. However, as this Court has held in Lada v. INS, Reyes-Melendez v. INS, and Aguirre v. INS, the specific words ''due process'' are not required in order to exhaust a claim before the BIA. But how about bias? What about bias or prejudice or anything which would suggest that this person was not an independent decision-maker? Your Honor, the Petitioners did not use the words ''bias'' or ''prejudice'' in their brief before the BIA. However, this Court has held that magic words are not required to exhaust a claim. Rather, the Court looks to whether or not the BIA was sufficiently aware of and had the opportunity to review a claim in order for it to be exhausted. And here, the BIA did have the opportunity to review the immigration judge's errors. The Petitioners, in their brief before the BIA, expressly stated that, quote, ''The issues on appeal relate to questions of law, discretion, and judgment.'' It was clear to the BIA that the Petitioners were not just challenging the immigration judge's weighing of the hardships, that is, her discretionary decision, but also the legal issues attendant to the appeal. Did she use the word ''bias''? Did the Petitioners? Yes. No, they did not, Your Honor. But they raised the legal standard. That's the closest word. Put us to the very, very closest thing that you have that could demonstrate that it was raised below. Your Honor, I think that it would be first the statement that I referenced about the questions of law being raised on appeal, and then the two and a half pages that were spent discussing the proper legal standard, and then the rest of the brief, which re-argues the merits of the hardship determination. Essentially, the brief sets out the proper legal standard and then re-argues its case to the BIA, which is, frankly, understandable given the hostility and bias with which they were met before the immigration judge. Did they pro se on appeal? I do not believe they were, Your Honor. You say the hostility and bias was apparent. Yes, Your Honor. It was apparent from the face of the immigration judge's decision, which the Board of Immigration Appeals, citing matter of Rubano, adopted in full. But that was not pointed out to the BIA even in general description terms? Not in terms of the immigration judge's expressive bias. I know you have, but you have to work with the record that you have. Sure, Your Honor. The word bias, the word hostility does not appear in any of the documents Petitioners filed with the BIA. It does not. Or even the word unfair. I'm not sure about that one, Your Honor. But the point is that before the Board of Immigration Appeals, Petitioners were clearly raising legal claims of error that related to the standard that the immigration judge applied and the manner in which she applied it. That allows the BIA the opportunity to correct any errors that the immigration judge made in applying the standard and articulating it. That allows them to correct the due process violations that occurred in this case because the due process violations occurred in the manner in which the immigration judge weighed the hardships and the standards she used to do so. So under the case law that this Court has decided, as I mentioned, in Lada, Aguiman, and Reyes-Melendez, the BIA had the opportunity to correct the legal error claim. And because the Petitioners in their BIA brief pointed to that portion of the immigration judge's decision in which the due process violations occurred, the BIA was on notice of the claim. The BIA ratified the immigration judge's errors when it adopted her opinion in full. As this Court noted in Abebe v. Gonzales, the BIA has the opportunity to only adopt portions of the immigration judge's decisions, but it did not in this case. It adopted the immigration judge's decisions along with the due process violations which are plain from the face of the decision. Simply because the BIA did not take the opportunity to correct the immigration judge's errors does not mean that it lacked the opportunity to do so. Moving on to the exhaustion of the legal error claim, that claim is a little more easily seen from the BIA's brief. There, the Petitioners do discuss in about two and a half pages the appropriate standard for assessing hardship and the factors that should be used within that standard and that they should be addressed cumulatively. Accordingly, the legal error claim, in addition to the due process claim, was in fact exhausted before the BIA. Turning to the substance of the due process violation, it is clear from the numerous moralistic and snide comments made by the immigration judge during the proceedings that there was a due process violation and that prejudice resulted therefrom. For example, the immigration judge's bias caused her decision to be motivated by a moral judgment that the Petitioners needed, quote, an impetus to find employment, unquote, suggesting that the risk to the Petitioners' children's health could serve as this impetus. As in Reyes-Melendez, this moral judgment was inappropriate to be made on the record and was certainly inappropriate as a basis for the immigration judge's decision here. In addition, the IJ disregarded uncontroverted, credible evidence when she decided that the Petitioners' injuries were, quote, somewhat suspect and speculated, again, wholly without the support, that Petitioners, quote, may have other opportunities where they can support their family if required to do so without the help of Medi-Cal and all the other provisions available in the United States, unquote. However, the only evidence in the record was that the Petitioners were legitimately disabled. They credibly testified to that and their doctors credibly so testified. However, the immigration judge overlooked this and did not – there is no evidence in the record to support her claim of other opportunities in Mexico. Well, now, what about page 41 of the IJ decision? As with extreme hardship, all hardship factors should be considered in the aggregate when accessing exceptional unusual – extremely unusual hardship? Yes, Your Honor. The IJ does invoke the boilerplate standard, but as this Court has held, it will look to what the immigration judge did rather than what she said. And here it appears, as we've argued in our claim of legal error, that she only considered the economic detriment of removal to Mexico in conjunction with the harm to Jonathan, the Petitioners' 10-year-old U.S. citizen son, with respect to his health care needs. It does not appear that she looked to the economic detriment of removal along with the health care requirements of Juan Armando, who has a diagnosed depressive and oppositional conduct disorder. Your Honor, I'm moving into my next. You're down to two minutes, so your choice. Okay. I'll see you on rebuttal. Okay. We'll hear from the government. Good afternoon. Peter Mattson for the Respondent. This case is on appeal from a decision of the Board of Immigration Appeals that affirmed an immigration judge's denial of a discretionary relief in the form of exceptional and extremely unusual hardship. The challenges to the neutrality of the immigration judge and the standard of laws presented in the opening brief are simply a request to review the judge's definition of hardship. The Petitioners do not like the evidence considered by the judge. This is not a challenge to the State. Well, a lot of the evidence considered by the judge really shouldn't have been considered as part of the hardship evaluation. I mean, the judge was supposed to be evaluating this question of hardship vis-à-vis the qualifying relatives, right? That's correct, ma'am. So all of these comments about the parents living off of Medi-Cal and, you know, this is a situation where it's apparent that the family has been dependent upon public assistance in the form of Medi-Cal. Not only that, they themselves have been treated by various physicians. The Court does not know how these people are going to survive in Mexico. These people are pathetic. All of those comments, you're not really seriously arguing that those were legitimate grounds for the I.J. to be considering. The judge was provided with the evidence that she received. The majority of the evidence concerning their financial hardship. That wasn't evidence in the record. That was her speculation. The evidence of their financial condition was presented by the Petitioners. The testimony regarding their receipt of public assistance was raised on direct examination by their counsel during the hearings. To consider financial hardship. There were some legitimate grounds for consideration here. What were they? In the two board decisions, the three board decisions that have discussed hardship determinations, two of them have discussed specifically the financial burden that is presented. Following Monreal, there were two decisions. One is Gonzales-Racinus, and I'll quote from the findings of the board. The factors considered in assessing the hardship to the Respondent's children include the heavy burden, heavy financial burden imposed on the Respondents to provide the sole financial and familial support for their six children. Again, in Andazola-Rivas, the factors considered in assessing the hardship to the Respondent's children include poor economic conditions. The board has stated that financial conditions will be considered, and the rule of evidence in immigration court is whether it's material and relevant. The fact that someone receives public assistance is not something that you can issue a categorical statement that this is bad or this is good. It depends on the facts and circumstances of each case, and that's why these are discretionary determinations. A person who receives financial assistance can be presumed to have financial difficulties. Somebody who receives public resources is not someone who is automatically determined to be bad or to be good. It can be interpreted in a wide variety of ways. Well, not according to this, I.J. She thought it was pathetic. She said so. She said she felt sorry for the children in this case. Did she use the word pathetic? Yes, Your Honor. And immediately following her statement, these Respondents are pathetic, she said the court feels very sorry for the children in this case. They may have parents who want to do the best for them, but they don't seem to have shown it. That's essentially the quotation from the immigration judge's decision. Throughout the hearings, this judge never interrupted the witnesses, never denied them the opportunity to present witnesses. This judge conducted the hearings fairly. There was one request made by the Petitioners throughout the entire administrative proceedings that was denied, and that was a subpoena. Every other opportunity was granted, this judge provided for telephonic testimony of three separate physicians, two of whom were represented to discuss medical conditions of Ms. Ramirez and not the children. Well, I think we're confusing some things because we've got a couple of different claims. We have the claim of bias, which I believe you took the position that it wasn't exhausted, so we don't have jurisdiction. That's correct. Okay. So that's that claim. But then we have the application of the correct legal standard. Which also was not exhausted. Neither one was presented to the Board. The Board has not addressed either question. In the appeal to the Board, there are two references to the immigration judge's decision. Both of them state the immigration judge erred in denying the application for cancellation of removal. In no other place did they ever mention anything about the contents of the immigration judge's decision, nor did they discuss a challenge to the standards set in Monterey Hall or any of the other Board cases discussing cancellation of removal. There was clearly no mention of a standard error, and there's no challenge to a regulation or to a statute. This is not a case involving statutory construction or an interpretation of Section 240A, subparagraph B. There's no challenge to a regulation. There is a challenge to the judge's discretionary determination. Termining, if I may, to the allegation regarding jurisdiction based on this Court's decision in Abebe, Abebe was an asylum case. Two Petitioners presented two separate grounds for asylum. One was political opinion, the other was a particular social group. On appeal to the Board, the Petitioners challenged the political opinion question. They did not challenge the particular social group question. The Board issued a Bourbonno Affirmance, and this Court held that because the Board didn't specify which of the two claims, two separate grounds, that they were considering, then it was determined that the Board had addressed them both. In this particular case, there's only one application. There's only one issue presented. Did the judge commit error in denying the application for cancellation of removal? There was no other issue for the Board to address, and in their decision, they specifically state exactly what they were considering. We agree that the Respondent failed to demonstrate eligibility for cancellation of removal. There's no statement on the Board or any implication. The Board has considered any other reason. The regulations state that they require Petitioners before the Board to be specific about what they appeal. The Court has held that a Petitioner before the Board must state with sufficient specificity the ground for appeal. The Court has recognized that the Board requires that it be clear whether the alleged impropriety in the decision lies with the immigration judge's interpretation of the facts or his application of legal standards. Where a question of law is presented, supporting authority included, and where the dispute is on the facts, there should be a discussion of the particular details contested. That was not done in this case. There is no indication to the Board that they should ever have considered the bias or lack of neutrality of the judge, and no indication of a challenge to the standard of law employed. In the event that this Court is to determine that Bourbon affirmance automatically presumes that a newly raised issue can be addressed simply because counsel on appeal to this Court has decided to phrase it in particular terms or conditions that would allow for a colorable due process claim, would defeat the purpose of the statutory requirement for exhaustion and the regulation requiring specificity to the Board. The Board would no longer be permitted to review a discretionary determination under the regulations allowing it to do so. The regulations would become irrelevant. There was no appeal to the Board on the allegation of bias, allegations that must be stated on appeal to preserve the issue. Judge Stockton in this case weighed the evidence presented to her and the weight afforded to those factors, using an allegation of due process as an attempt to avoid the statutory requirement for exhaustion and a limitation on review of discretionary determinations as to exceptionally unusual hardship would make the entire process before the Board irrelevant. I would like to add parenthetically that both the opening brief and the reply brief allege due process violations without addressing whether a liberty interest is at stake. Within a removal proceeding, there must be due process. Lopez and Ramirez conceded removal. The only application here is an application for administrative grace in the form of cancellation of removal for exceptionally and extremely unusual hardship. The Supreme Court in Jay v. Boyd made clear that a grant of suspension is manifestly not a matter of right under any circumstances. In Yu Xiao Yang, the Supreme Court also expressly reaffirmed Jay v. Boyd's discretion of the Attorney General's discretion with respect to other forms of relief. Administrative grace in administrative proceedings, including cancellation of removal, even in the effective assistance of counsel context, creates no liberty interest to which the due process clause attaches. Every circuit, including the Ninth Circuit, has agreed. Without a liberty interest, a due process claim must be rejected. The discretionary grant of cancellation of removal in this case presents just such an issue. There's no liberty interest because a discretionary determination on cancellation of removal is not a matter of right, and therefore, the due process clause cannot be violated. In conclusion, the Court lacks jurisdiction to review discretionary determinations of cancellation of removal. So it matters not how nasty an immigration judge gets, how biased they appear, if it's in a cancellation setting? That would be the interpretation from Jay v. Boyd. That's your argument. And a due process clause requires a liberty interest. So once it's cancellation, the gloves are off. Boy, this is a new one to me. As unfair as it sounds, that's the requirement in the Fifth Amendment. There must be a liberty interest to protect with due process. Okay. Thank you, counsel. Your time has expired. We will hear now from Ms. Wydra. You have some reserved time. Your Honor, first, I would like to address some of the exhaustion points raised by counsel. First, there were two issues on appeal to the BIA. One was the legal standard. The brief is divided into two sections, section arguing about the legal standard to be applied in hardship. Petitioners said in their brief they laid out the standard, said the I.J. must consider each factor and cannot ignore factors which must be taken into account. It's clear that they are raising the legal standard to be applied to hardship determinations. Second, they were indeed appealing the immigration judge's exercise of discretion. That's without question. But they also appealed the legal issues, as is made clear in their brief. Second, with respect to whether or not it was appropriate to consider economic conditions, it is in circumstances as this Court — I'm sorry, as the BIA did in Ray Gonzalez-Racinus — consider economic hardship. But what was a due process violation as this case was the manner in which the immigration judge went about it and the way in which she used speculation and bias instead of the evidence in the record to form her opinion. She essentially prejudged the case, as did the judge in Lopez-Umanzor, instead of listening to the evidence and weighing her decision according to the evidence in the record, instead of her own stereotypes and biases about the petitioners before her. Finally, Your Honor, there is indeed a liberty interest at stake here. The Supreme Court has noted that being removed to — away from the country in which you have U.S. citizen family is perhaps one of the weightiest interests at stake in legal proceedings. Well, I think that refers to the deportation. Here, we're talking about cancellation of a deportation order. Absolutely. That is the context in which we find ourselves. However, the interest remains the same. Additionally, it appears, and I apologize for not having a broadly contextualized argument on this point, that in Lopez-Umanzor v. Gonzalez, the Court also considered cancellation of removal and the immigration judge's prejudgment and bias in that case and applied due process in order to find for the petitioner and remand. We ask that the Court do the same in this case. Thank you, counsel. Your time has expired. The Court would like to thank Ms. Wydra for her willingness to take this case on a pro bono basis. We appreciate that very much. I didn't see your name on the brief, but I assume you are with Quinn Emanuel Firm. I am, yes. I'm a late entrant to the case. All right. It is my pleasure. Thank you. Thank you very much. The case just argued will be submitted for decision. And we will hear argument in United States v. — is it Richard or Richard, R-I-C-H — Richard. Richard, thank you.
judges: O'scannlain,hawkins,wardlaw